**UNITED STATES of America,**

v.

**SUPLIMET CORP., Herman Lozano a/k/a/ "Alberto Cubillos," a/k/a "Cubillos A. Herman," Xavier Lozano, a/k/a "Javer Lozano," and Ana Jimenez Lynn, Defendants.**

**No. 0420817CRKING.**

United States District Court, S.D. Florida, Miami Division.

April 27, 2005.

Lauren Fleischer, AUSA, United States Attorney's Office, Miami, FL, for Plaintiff.

Ira N. Loewy, Esq., Donald I. Bierman, Esq., Humberto Rolando Dominguez, Esq., Bierman, Shohat, Loewy & Klein, Michael S. Pasano, Esq., Zukerman, Spaeder Taylor & Evans, Robert John Becerra, Esq., Sandler, Travis & Rosenberg, The Waterford, Martin Robert Raskin, Esq., Raskin & Raskin, Miami, FL, for Defendants.

### ORDER DENYING DEFENDANTS' MOTIONS TO SEVER WITHOUT PREJUDICE

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendant Hermann Lozano's Motion to Sever Trial (DE # 78), filed February 8, 2005 and Suplimet Corp.'s Motion to

Sever Trial (DE # 79), filed February 10, 2005.[1]

In their respective motions, Defendants Hermann Lozano and Suplimet Corp. ("Suplimet") move for a severance of trial from their Co–Defendants, Xavier Lozano and Ana Jiminez Lynn ("Jiminez"), on the ground that the Government intends to introduce testimonial hearsay statements of these Co–Defendants which are incriminatory with respect to Hermann Lozano and Suplimet. Defendants Herman Lozano and Jiminez argue that the introduction of these statements would violate their right of confrontation pursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and this requires that the Court grant a severance pursuant to *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny. In response, the Government argues that severance is unnecessary and maintains that redacted versions of Xavier Lozano's and Jiminez's statements may be admitted against Suplimet (because they argue they are agent admissions), Jiminez and Xavier Lozano (as party admissions by a co-conspirator) with a limiting instruction from the Court that they may not be used as evidence against Hermann Lozano.

## I. BACKGROUND

Suplimet, a distributor of cell phone parts, principally for export to Latin American markets, and its president, Hermann Lozano, are charged in a three-count indictment with trafficking in and conspiring to traffic in counterfeit goods, in violation of 18 U.S.C. §§ 371 and 2320(a). Also named in the indictment are Xavier Loza-

no, Hermann's brother and the sales manager of Suplimet, and Jiminez, an employee of Suplimet. The indictment charges that from at least as early as January of 2003, the thee individual defendants, working with and on behalf of Suplimet, imported and sold counterfeit cellular telephone parts and accessories, which infringed on the trademarks of Nokia, Motorola and Sony Ericsson.

On October 5, 2004, the Government executed a search warrant on Suplimet's premises in Miami–Dade County. The Government seized approximately 15 pallets of allegedly counterfeit merchandise along with Suplimet's office computers. When the search warrant was executed, defendants Xavier Lozano and Jiminez were present. At that time, agents of Immigration and Customs Enforcement ("ICE") allegedly interviewed Jiminez after she waived her *Miranda* rights and arrested Xavier Lozano, who also allegedly made post-*Miranda* statements and gave a written statement in his own hand.

Jiminez's alleged hearsay statements are contained in the ICE agents' investigation report, and are reproduced below as redacted by the Government in its supplemental response:

> JIMENEZ advised that she had been employed by SUPLIMET since April 2002 as a secretary / sales person.

> JIMINEZ acknowledged that she had sold counterfeit Motorola batteries but claimed that she was selling the remaining 50 Motorola batteries from an old batch. JIMINEZ stated that her husband, Joseph Lynn, had warned her

---

1. On February 16, 2005, the Court held a consolidated hearing on Defendants Hermann Lozano's and Suplimet Corp.'s motions to sever. On February 22, 2005, the Government filed a consolidated response. On April 1, 2005, pursuant to an *ore tenus* Court order, the Government filed a supplemental response, which included a redacted version of statements the Government will seek to submit at Defendants' trial. On April 8, 2005, Defendant Hermann Lozano filed a reply to the Government's response.

about her illegal activities and in December, she was planning on resigning from SUPLIMET and moving to Illinois.

JIMINEZ explained ... customers use coded language to differentiate between counterfeit, and genuine. JIMINEZ further explained that the term used for counterfeit is "original", for genuine "original, original" and all other products are considered generic. JIMINEZ stated that most of the counterfeit business is noted by the considerably lower price and she acknowledged selling the Motorola batteries to the u/c agents at approximately $4.50 a piece.

JIMINEZ stated that Andres Moreno, a salesperson and Luis Gonzales, the warehouse manager were also aware of counterfeit merchandise in stock and that a former employee named MAGDALIS (LNU) was responsible for adhering and removing stickers from counterfeit cellular telephone parts.

The Government agrees in it is Supplemental Response that Xavier Lozano's alleged hand written statement should not be submitted in a joint trial. The redacted report of Xavier Lozano's alleged statements reflects the following:

LOZANO advised that he was not the owner of SUPLIMET and has held the position of Sales Manager since ... 1998.

When asked about the specific trademarks sold ... which are counterfeit, LOZANO responded Motorola and Kiosara. LOZANO claimed that prior to a civil suit ... had sold Nokia but was no longer stocking those parts. When told that agents conducting the search had already discovered counterfeit Nokia parts LOZANO responded "ok, Nokia too" and added, "whatever else had a trademark was probably counterfeit."

LOZANO accompanied agents through the 14,000 square foot warehouse where he identified various boxes of counterfeit cellular telephone parts and where additional counterfeit parts may be found. LOZANO stated that he had just returned from a business trip to Argentina and Colombia .... LOZANO advised that he had only visited China once and identified the Chinese representatives for SUPLIMET China as Jay Wu.... LOZANO identified the original SUPLIMET in Colombia as a smaller version of the Miami office where his father Luis LOZANO manages the business. LOZANO stated that different warehouse employees removed trademark stickers and Jimmy PAZ handled the stickers applied to counterfeit batteries. LOZANO claimed that ... was not profiting as much money as its customers because their customers knew the product was counterfeit and increased the price so that the ultimate consumer purchased the product believing it is an authentic trademark.

## II. DISCUSSION

The Confrontation Clause of the Sixth Amendment provides a defendant in a criminal trial the right to confront and cross-examine the witnesses against him. *Bruton,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. In *Bruton,* the Court held that a defendant is denied his Sixth Amendment right of confrontation where a co-defendant's confession implicating the defendant is admitted into evidence at a joint trial where the declarant co-defendant does not testify and is thus unavailable for cross-examination. Recently, in *Crawford,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the Court confirmed the proscription on the government's ability to introduce "testimonial" hearsay statements against a defendant at trial, where the declarant does not testify and is unavailable for cross-examination. *Crawford* en-

sured the protection of *Bruton's* confrontation principles by overruling *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and its progeny, which permitted the use of out-of-court statements testimonial in nature against an accused at trial if such statements were deemed reliable by the court. As stated by the Court, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford,* 124 S.Ct. at 1374.

In the instant case, it is undisputed that unredacted statements made by Xavier Lozano and Jiminez are "testimonial" in nature. *See Crawford,* 124 S.Ct. at 1364 (stating that "[t]estimonial" hearsay includes statements taken by police officers during the course of interrogations). Further, the Court has tentatively determined that these hearsay statements, while clearly admissible against the declarants, are probably not admissible in a joint trial even in a redacted version with limiting instructions because they tend to implicate at least some of the Co–Defendants. Introducing these statements would violate those Co–Defendants' Sixth Amendment right to confrontation. On the other hand, should Xavier Lozano and/or Jiminez choose to testify in their own defense the Government would, of course, be permitted to use the statements for impeachment purposes. Should this eventuality occur, a severance of the non-testifying Defendant's would probably become necessary.

Nevertheless, the Court concludes a final ruling on the motions at this time would be premature, because there are too many factors currently unknown that could affect the issues contained therein. For example, possible pleas of some of the Defendants; election by the Government not to offer the statements in their case-in-chief; election of Xavier Lozano and/or Jiminez to testify at trial; and rulings on pending motions to suppress the statements now pending before Magistrate Judge Garber.

### III. CONCLUSION

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is ORDERED and AD-JUDGED that Defendants', Hermann Lozano and Suplimet Corp., Motion to Sever be, and the same are hereby, DENIED without prejudice to the right to renew a motion for severance at any time it may become relevant during trial.